IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
December12, 2012 Session

## MARY C. SMITH, as Surviving Widow of James B. Smith v. UHS OF LAKESIDE, INC., ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-004669-05      Kay S. Robilio, Judge**

**No. W2011-02405-COA-R3-CV - Filed January 18, 2013**

Appellant appeals the trial court's grant of summary judgment in favor of Appellee mental health facility, effectively dismissing the case. Having determined that the trial court failed to state the legal grounds upon which it was granting summary judgment, we vacate the orders at issue and remand for entry of orders that comply with Rule 56.04 of the Tennessee Rules of Civil Procedure.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Mimi Phillips and R.H. Chockley, Jr., Memphis, Tennessee, for the appellant, Mary C. Smith.

Marty R. Phillips and Ashley D. Cleek, Jackson, Tennessee, for the appellee, UHS of Lakeside, Inc.

### OPINION

### I. Background

On September 5, 2004, James B. Smith began to feel ill and was sent home from his job at Federal Express. Approximately two hours later, Sheriff's Deputies found Mr. Smith asleep in his car on the side of the road. Mr. Smith was awakened by police. After speaking with Mr. Smith, the deputies became aware that Mr. Smith was suffering from visual

hallucinations. Specifically, Mr. Smith stated that he observed worms coming out of the ground. After a preliminary investigation, Sheriff's Deputies concluded that Mr. Smith was not intoxicated, but that he was likely suffering the effects of a mental illness. Accordingly, they took him to the Lakeside Triage Center ("the Triage Center") for the Regional Medical Center at Memphis ("the Med"). The deputies' decision was made pursuant to a statute that allows police officers to take suspected mentally ill drivers to a treatment facility for "immediate evaluation." Mr. Smith was detained at the Triage Center for a total of forty-nine hours. According to the complaint, he was given no meals, no bed, and no hospital gown at the Triage Center. In addition, it is alleged that he received no medical treatment of any kind during his detainment.

While Mr. Smith was detained, his wife, Mary C. Smith became concerned about his absence and called police stations and hospitals to find him. After finally learning that he was at the Triage Center, she and her sons arrived to take him to the hospital, knowing that he had no history of mental illness and was likely ill. However, the Triage Center refused to release Mr. Smith because they stated that he had been "involuntarily committed."

Various nurses, as well as Dr. John O'Connell and another physician examined Mr. Smith during his stay. Throughout his stay, Mr. Smith's heart rate, blood pressure, and temperature were elevated and abnormal, though they fluctuated. Per his later deposition testimony, Dr. O'Connell "medically cleared" Mr. Smith on the evening of September 5, 2004. A medical clearance is a process in which a physician ensures that the patient's symptoms are not physiological in nature, and instead stem from a psychological or psychiatric issue. The medical clearance form signed by Dr. O'Connell, however, contains no date or time. On the early morning of September 6, 2004, Cindy Zahn, a social worker, performed another evaluation on Mr. Smith. Ms. Zahn noted that Mr. Smith was unable to answer many of the questions, was unresponsive, and that his wife had informed her that he had no history of mental illness. Regardless, Ms. Zahn concluded that Mr. Smith was "a danger to himself and others and needs inpatient [treatment]."

Later in Mr. Smith's stay, after nurses became concerned about Mr. Smith's worsening condition, they contacted Dr. O'Connell, who ordered additional tests on Mr. Smith, including blood work and a CT scan. During the afternoon of September 6, 2004, however, both Dr. O'Connell and another social worker signed "Certificates of Need" indicating that Mr. Smith needed further psychological treatment because his delusions placed him and others in danger. The social worker noted that Mr. Smith "placed others in reasonable fear of violent behavior," despite that fact that no other medical personnel indicated that Mr. Smith was violent. In addition, Dr. O'Connell indicated that Mr. Smith had

a "negative medical history,"[1] despite the fact that Ms. Smith informed those at the Triage Center that her husband had no history of mental illness.

According to Dr. O'Connell, he ultimately revoked the medical clearance on the evening of September 6, 2004 and ordered more testing to determine whether Mr. Smith's symptoms stemmed from a physical ailment. On the morning of September 7, 2004, Dr. O'Connell ordered nurses to administer fluids to Mr. Smith. Throughout the day on September 7, nurses attempted to transfer Mr. Smith to the Med where he could receive treatment for a physiological illness. The Med refused to take Mr. Smith due to bed and staff shortages. A nurse also attempted to call an ambulance for Mr. Smith, but was informed that an ambulance would not come because he was already at the hospital. After his medical clearance was revoked, Mr. Smith was allegedly left unsupervised in a hallway for several hours. Several hours later, on the evening of September 7, 2004, Mr. Smith was taken by ambulance from the Triage Center to the emergency room at St. Francis Hospital. At St. Francis Hospital, he was diagnosed with acute encephalopathy and respiratory failure, which had caused his visual hallucinations. Mr. Smith remained at the hospital until November 17, 2004, when he returned home. At home, however, Mr. Smith was bed bound, on feeding tubes, unable to speak, and cognitively impaired. After several weeks at home, he returned to the hospital, where he died.

On August 30, 2005, Plaintiff/Appellant Mary C. Smith ("Appellant"), as surviving spouse of Mr. Smith, filed a Complaint for Damages for Wrongful Death, Medical Malpractice, Outrageous Conduct, Negligent Infliction of Emotional Distress, and violation of the Emergency Medical Treatment and Labor Act ("EMTLA") against Charter Lakeside Behavioral Health System, and Shelby County Healthcare Corporation d/b/a The Regional Medical Center at Memphis ("the Med"). The complaint was later amended to add the correct name of the corporate defendant, Defendant/Appellee UHS of Lakeside Inc. ("Lakeside"), which operated the Triage Center, and Charter Lakeside Behavioral Health System was dismissed from the case. Lakeside filed an answer and an amended answer to the complaint, denying the material allegations contained therein.

The Med filed a Motion to Dismiss on March 8, 2006, alleging that Mr. Smith was not a patient of the Med and that the Med had contracted responsibility for triaging mental health patients to Lakeside. On November 21, 2006, Lakeside filed its first Motion for Summary Judgment, alleging that Mr. Smith's death was four months after his treatment by Lakeside, that it is not subject to the provisions of the EMTLA, and that the outrageous conduct and negligent infliction of emotional distress claims should be dismissed. On January 9, 2007, the Med filed a Motion for Summary Judgment, arguing that the EMTLA

---

[1] The phrase "negative medical history" is not defined by Dr. O'Connell.

had not been violated and that, as a government entity, it could not be held liable for the acts of its independent contractors, nor for outrageous conduct and negligent infliction of emotional distress. On June 18, 2007, the trial court granted the Med's motion with regard to the vicarious liability, outrageous conduct, and negligent infliction of emotional distress. All remaining summary judgment motions were denied by order entered November 9, 2007.

On December 21, 2007, the Med filed another Motion for Summary Judgment, arguing that Appellant's EMTLA claims are subject to the GTLA cap on damages. On February 8, 2008, this motion was granted.

On June 12, 2009, Appellant filed a third amended complaint, asserting claims of false imprisonment and battery. In August of 2009, Appellant settled with the Med and the Med was dismissed from this case. Accordingly, the Med is not a party to this appeal.

On February 12, 2010, Lakeside filed five separate Motions for Summary Judgment: (1) Motion for Summary Judgment Regarding Vicarious Liability for Physicians: (2) Motion for Summary Judgment on Outrageous Conduct; (3) Motion for Summary Judgment Regarding Appellant's Claim for Negligent Infliction of Emotional Distress; (4) Motion for Summary Judgment Regarding Appellant's Claim based on EMTLA; (5) Motion for Summary Judgment Regarding False Imprisonment. On March 26, 2010, the trial court denied the motions regarding outrageous conduct, EMTLA, and negligent infliction of emotional distress. Lakeside's attorneys were directed to fashion an order granting summary judgment on the vicarious liability and false imprisonment claims. Although Appellant objected to the contents of the order, the trial court entered it on April 8, 2010.

On November 4, 2010, Lakeside filed another Motion for Summary Judgment, arguing that Appellant had no proof of causation. Specifically, Lakeside argued that Appellant's only medical expert, Dr. Etheldreda Collins, testified and signed an affidavit stating that the proximate cause of Mr. Smith's injuries was the negligence of Dr. O'Connell alone. Because the trial court had already ruled that Lakeside was not vicariously liable for Dr. O'Connell's negligence, Lakeside argued that all claims must be dismissed. Appellant was later allowed to amend its complaint to add claims for ordinary negligence and negligence per se.

A hearing was held on Lakeside's pending summary judgment motion. At the conclusion of the hearing, the trial court declined to rule, and allowed Lakeside to re-depose Appellant's expert. Numerous additional briefs were filed by both parties and the trial court again heard oral argument on the issue. At the conclusion of the hearing on September 6, 2011, the trial court granted summary judgment to Lakeside on all claims. At the trial court's instruction, Lakeside's attorneys again prepared the order, which was entered on October 3,

2011, over Appellant's objections. Appellant timely appealed.[2]

## II. Issues Presented

1.    Whether the order granting summary judgment, which was prepared by Lakeside's attorneys, is invalid because it contains factual findings and legal rulings that the trial court did not orally state when it granted summary judgment?
2.    Whether the trial court erred in granting summary judgment in favor of Lakeside as to Appellant's outrageous conduct, negligent infliction of emotional distress, and violation of the EMTALA claims, on the grounds that the Court stated no legal grounds for the ruling and because there had been no motions, pleadings, hearings, or arguments on these issues?
3.    Whether the trial court erred in granting summary judgment in favor of Lakeside as to Appellant's ordinary negligence and statutory negligence claims because there had been no motions, pleadings, hearings, or arguments on these issues and the issues are unrelated to Lakeside's Motion for Summary Judgment Based on Lack of Causation Proof?
4.    Whether the trial court erred in granting summary judgment in favor of Lakeside on the issue of the competency of Appellant's expert testimony when the ruling is erroneous and the ruling conflicts with the trial court's ruling from the bench denying the motion?
5.    Whether the trial court erred in granting summary judgment in favor of Lakeside on Appellant's loss of chance claim when the expert testimony showed that the deceased had a "better than even" chance of not ending up permanently impaired?
6.    Whether the trial court erred in ruling that Tennessee's rejection of "loss of chance" operates to foreclose all recovery for pain, suffering , illness, medical expenses, and

---

[2] During the pendency of the appeal, on May 22, 2012, Appellant filed a motion in this Court seeking to suspend the Tennessee Rules of Appellate Procedure, pursuant to Rule 2, and to waive the requirement of a final judgment in this matter. After a response was filed by Lakeside, this Court entered an order holding Appellant's motion in abeyance pending final disposition of this appeal. Pursuant to the mandates of Rule 13(b) of the Tennessee Rules of Appellate Procedure, we reviewed the appellate record to determine if the order entered in this case was a final order conferring jurisdiction on this Court to hear the matter. From our review of the record, the trial court's order clearly states that it grants summary judgment on "all claims between [Appellant] and Lakeside, and Defendant UHS of Lakeside, Inc. . . . is hereby dismissed from this case with prejudice." At the time this order was entered, Appellant' claims against the Med had been voluntarily dismissed and Lakeside was the only remaining defendant. Thus, the order dismissed all claims remaining in the case and was a final judgment. *See* Tenn. R. App. P. 3 ( providing that in order for a judgment to be final it must adjudicate all the claims of all the parties). Although we will discuss the propriety of that dismissal below, it is clear that the trial court's order disposes of all the claims remaining in the case. Thus, Appellant's motion is dismissed as moot and this Court has jurisdiction to consider the appeal.

lost earning capacity proximately caused by Lakeside?

7.  Whether the trial court erred in granting summary judgment on the issue of whether Dr. John O'Connell was the apparent agent of Lakeside?

8.  Whether the trial court erred in deciding that Dr. John O'Connell was the actual agent of the Med rather than Lakeside, when there was no contractual relationship with the Med?

9.  Whether the trial court erred in granting summary judgment in favor of Lakeside and finding that the Appellant's settlement with the Med released Dr. John O'Connell of liability, when substantial evidence showed him to be an agent of Lakeside?

10. Whether the trial court erred and usurped the role of the jury in granting summary judgment in favor of Lakeside on the false imprisonment claim?

### III. Orders on Lakeside's Summary Judgment Motions

Ms. Smith first argues that the trial court erred in entering orders prepared by counsel for Lakeside that did not reflect the trial court's oral rulings at the hearings on Lakeside's motions for summary judgment. Thus, Appellant argues that the trial court's ruling fails to comply with Rule 56.04 of the Tennessee Rules of Civil Procedure and asks that the orders be vacated and remanded for reconsideration.

The requirements of Rule 56.04 of the Tennessee Rules of Civil Procedure are clear: when ruling on a motion for summary judgment, "[t]he trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling." The requirements of Rule 56.04 were recently discussed in this Court's opinion in *Winn v. Welch Farm, L.L.C.*, No. M2009-01595-COA-R3-CV, 2010 WL 2265451 (Tenn. Ct. App. June 4, 2010):

> In 2007, Tennessee Rule of Civil Procedure 56.04 was amended to require the trial court to "state the legal grounds upon which the court denies or grants the motion," and to include such statement in the order reflecting the trial court's ruling. When the legal grounds for the trial court's decision are omitted, a reviewing court cannot analyze the decision's validity, and appellate review becomes unnecessarily speculative. "Without such a statement . . . a reviewing court is left to wonder on what grounds the trial court granted the motion for summary judgment." *Eluhu v. HCA Health Servs. of Tenn. Inc.*, No. M2008-01152-COA-R3-CV, 2009 WL 3460370, at *21 [(Tenn. Ct. App. Oct. 27, 2009)]. The 2007 amendment to Tenn. R. Civ. P. 56.04 was intended to cure this problem. The

-6-

Rule's requirements are specific and without exception. Tenn. R. Civ. P. 56.04; *see also* ***Eluhu***, 2009 WL 3460370, at *21 (vacating the trial court's grant of summary judgment upon finding that the trial court did not state the legal grounds upon which the trial court granted the motion); ***Burse v. Hicks***, No. W2007–02848–COA–R3–CV, 2008 WL 4414718, at *2 (Tenn. Ct. App. Sept. 30, 2008) (finding noncompliance with Rule 56.04 where trial court's order merely provided "it is hereby ordered, adjudged and decreed that the Motion for Summary Judgment of [the defendant] is well taken and should be granted pursuant to law and there being no material disputed fact," but proceeding with appellate review upon a finding that there was only a "clear legal issue").

***Winn***, 2010 WL 2265451, at *5. The Court in ***Winn*** concluded that it was unable to consider the merits of the appeal due to the trial court's failure to comply with Rule 56.04, when the trial court's ruling merely stated that "the Court believes there are no genuine issues of material fact and that the Respondents are entitled to judgment as a matter of law." ***Id.*** at *6. Because the ***Winn*** case did not present "a clear legal issue," ***Id.*** (citation omitted), we were not able to "soldier on without guidance from the trial court. " ***Id.*** (citing ***Church v. Perales***, 39 S.W.3d 149, 158 (Tenn. Ct. App.2000)).

In this case, however, the issue presented by the trial court's ruling is not the fact that the order entered contains no legal grounds for the ruling, but, as argued by Appellant, that the legal grounds contained in the order do not accurately reflect the trial court's oral rulings in this case. In fact, according to Appellant, the trial court made no specific oral rulings other than to grant summary judgment in favor of one party or the other.

To determine whether the trial court fulfilled its duty pursuant to Rule 56.04, we turn to consider the trial court's oral rulings and the orders entered in this case. First, on March 17, 2010 the trial court orally ruled that it was granting summary judgment to Lakeside on the issues of false imprisonment and vicarious liability and directed that counsel for Lakeside prepare an order to that effect.[3] The transcript from the hearing provides the trial court's oral

---

[3] At the March 17, 2010 hearing, the trial court also considered Lakeside's motion for summary judgment on the negligent infliction of emotional distress, outrageous conduct, and EMTALA claims. The trial court denied these motions and directed counsel for Appellant to prepare the orders on those motions. Lakeside did not take issue with the contents of those orders in the trial court or on appeal. Thus, any consideration of the propriety of those orders is waived. *See* Tenn. R. App. P. 13(b) ("Review will generally only extend to those issues presented for review.").

ruling on the issues presented at the March 17, 2010 hearing:

> I'm going to rule in favor of the [Appellant] on the EMTALA
> issue; the false imprisonment, I'm going to rule in favor of
> [Lakeside]; outrageous conduct, I'm going to rule in favor of the
> [Appellant]; negligent infliction of emotional distress is awfully
> close, awfully close, but I'm going to rule in favor of the
> [Appellant]; agency [i.e. vicarious liability] is the one that's left
> and I'm going to rule in favor of [Lakeside] on the question of
> agency . . . . Some of these issues are awfully close, highly
> contested and you all want to think about how you want to
> proceed. . . .
>
> *   *   *
>
> Now the appellate court is going to want a rationale from our
> rulings, so in the case of agency I'm going to let the, on the ones
> for which you were successful, I'm going to let you make
> proposed [orders]. . . . As far as a basis for the ruling, I'm going
> to let you make those.

Lakeside presented proposed orders on the false imprisonment and vicarious liability issues, but counsel for Appellant refused to sign, arguing that they did not reflect the trial court's ruling. Although counsel for Appellant agreed that the trial court had made comments throughout the hearing in which the rationale for some of the decisions could be inferred, in actually ruling on the case, Appellant's counsel argued that the trial court provided no legal grounds for its decision, in direct violation of Rule 56.04. Regardless, the trial court entered the proposed orders drafted by counsel for Lakeside on April 8, 2010.

The order contained in the record on the issue of false imprisonment is approximately four pages long and contains detailed and specific findings of fact and conclusions of law. The order specifically relies on Mr. Smith's lack of awareness that he was being confined as well as Lakeside's "probable cause" to detain him. Although the trial court heard argument from Lakeside that the above allegations defeated Appellant's claim for false imprisonment, the trial court never expressly stated that it credited those arguments. Instead, the trial court simply stated that it ruled in favor of Lakeside on that issue and directed counsel for Lakeside to prepare his own "rationale" for that ruling.

The order on the issue of vicarious liability is approximately seven pages long and likewise contains detailed findings of fact and conclusions of law. In granting summary

judgment on the issue of vicarious liability, the order relies on Appellant's alleged admission in her complaint that Dr. O'Connell was employed only by the Med, the lack of pleading and showing of apparent authority, and the settlement signed by the Med releasing all agents and employees for the Med. However, from our review of the transcript, nothing reflects that the trial court concluded that Appellant had made such an admission and Appellant sharply disputed any such finding, pointing to her Third Amended Complaint in which the Appellant cites the negligence of Dr. O'Connell as a basis for Lakeside's liability. Further while the order relies on Appellant's failure to specifically plead apparent authority in any of her three amended complaints, Appellant orally moved to amend her complaint to conform to the issues and arguments that had been exhaustively briefed prior to the summary judgment hearing. The trial court replied that, "That's what I think you have available to you." However, the trial court never specifically ruled on Appellant's oral motion, nor is the motion mentioned in the order prepared by counsel for Lakeside and entered by the trial court. Instead, the order entered simply grants summary judgment to Lakeside, relying in part on Appellant's failure to specifically plead apparent authority. Indeed, while the trial court questioned both parties regarding their arguments, the trial court never specifically stated that it credited either parties' theories and instead simply concluded it would grant summary judgment on this issue to Lakeside, again with Lakeside to provide its own "rationale."

Next, at the conclusion of the later hearing on September 6, 2011, the trial court orally ruled in favor of Lakeside on all issues. The transcript of the proceeding provides:

> The Court:  I think I've heard ample discussion on this. I am directing [Lakeside] to prepare the order and to establish the rationale for the Court's ruling in quite specific detail, and let this go forward as quickly as possible to the Appellate Court.
> Ms. Phillips [counsel for Appellant]:  On?
> The Court:  On all the rulings that the Court has made that you wish to challenge.
>
> *   *   *
>
> Mr. Phillips:  You're giving [Lakeside] full summary judgment on all claims that the [Appellant] has against Lakeside?
> The Court: Yes.

Lakeside again presented an order on the motion for summary judgment and Appellant again objected. A hearing on the issue was held on September 15, 2011. Ultimately, the order prepared by counsel for Lakeside was entered on October 3, 2011.

The order granting summary judgment on the remaining claims is eleven pages long. In it, the expert testimony of Dr. Collins is ordered excluded on the basis of Dr. Collins' inexperience with treating and diagnosing patients with encephalitis, the cancellation rule, and that Dr. Collins' testimony merely amounted to loss of chance, a theory of liability unrecognized in Tennessee. The order then concludes that, because Dr. Collins' testimony is the only testimony set forth in the record regarding causation, all of Appellant's claims are dismissed, noting that Appellant "has been unable to respond with any competent or admissible proof that a genuine issue of material fact exists on this issue." From our review of the transcript, however, the trial court made no specific rulings crediting any of Lakeside's arguments. Instead, the trial court again merely directed counsel for Lakeside to "establish the rationale" for the grant of summary judgment.

Based on the transcripts of the proceedings, Appellant argues that the trial court erred in abrogating its responsibilities under Rule 56.04 to counsel for Lakeside . Specifically, Appellant contends that the orders granting summary judgment to Lakeside do not accurately reflect the trial court's oral rulings because the court made no findings or conclusions whatsoever concerning its reasons for granting summary judgment. In the absence of any findings, Appellants contend that the court deferred its Rule 56.04 duty to state the legal grounds for granting summary judgment to Lakeside's counsel who, at best, speculated at the trial court's reasoning in drafting the orders. Accordingly, Appellant argues that the orders granting summary judgment do not comport with Rule 56.04 and should be vacated. After thoroughly reviewing the record and the applicable law, we agree.

The issue of party-prepared orders was previously considered in this Court's recent opinion of *Beach Community Bank v. Labry*, No. W2011-01583-COA-R3-CV, 2012 WL 2196174 (Tenn. Ct. App. June 15, 2012). In *Labry*, this Court explained:

> Prior to the adoption of the Tennessee Rules of Civil Procedure, the Tennessee Supreme Court held that the trial court should not adopt party-prepared findings of fact and conclusions of law. In *Nashville, Chattanooga, & St. Louis Railway Co. v. Price*, 148 S.W. 219 (Tenn. 1911), the trial judge refused to reduce his decision to writing and required counsel for the winning party to prepare the findings of fact. *Id.* at 220. The Supreme Court reversed, concluding that the trial court's procedure was impermissible. *Id.* The court stated that "[t]he preparation of such a finding, being a matter of so much importance and a high judicial function, cannot properly be intrusted to counsel." *Id.* The court reasoned that attorneys "have a natural bias with respect to cases in which they are

-10-

engaged that makes it well-nigh impossible for them to fairly and fully present all the facts as the judge would do." *Id.* The court further explained that factual findings are "accorded the highest dignity" by appellate courts and should therefore represent an independent conclusion of an unbiased judge. *Id.*

However, after the adoption of the Tennessee Rules of Civil Procedure, the Supreme Court, in ***Delevan-Delta Corp. v. Roberts***, 611 S.W.2d 51 (Tenn. 1981), recognized that "the thorough preparation of suggested findings and conclusions by able counsel can be of great assistance to the trial court." *Id.* at 52–53. Accordingly, the Supreme Court held that "although it is improper for the trial court to require counsel to prepare findings, it is permissible and indeed sometimes desirable for the trial court to permit counsel for any party to submit proposed findings and conclusions." *Id.* at 53.

The decision in ***Roberts*** was discussed in detail by this Court in ***Madden Phillips Const., Inc. v. GGAT Development Corp.***, 315 S.W.3d 800 (Tenn. Ct. App. 2009). According to this Court:

> The ***Roberts*** court offered guidance to lower courts when establishing findings of fact. The court maintained a clear preference for factual findings that are a product of the judge's own labor. *Id.* The ***Roberts*** court recognized, however, that other procedures sufficiently maintain the independence and impartiality of courts that adopt party-prepared findings. The court stated that trial judges may rely on party-prepared findings, so long as they carefully review proposed findings to ensure that the findings reliably reflect the court's opinion based on the testimony and evidence produced at trial. *Id.* The court also recognized a need to ensure that the proposed findings dispose of all relevant issues. *Id.* The court advised trial courts to "ascertain that [party-prepared findings] adequately dispose of all material issues, and to

-11-

assure that matters not a proper part of the determination have not been included." *Id.*

> *Id.* at 810–11.

*Labry*, 2012 WL 2196174, at *5. Thus, party-prepared orders are appropriate so long as: (1) the trial court does not require counsel to prepare the orders; (2) the trial court carefully reviews the orders to ensure that the conclusions reliably reflect the court's opinion; (3) the orders dispose of all relevant issues; and (4) no matters not a proper part of the determination are included. *Id.* (citing *Madden Phillips*, 315 S.W.3d at 811).

The facts of this case are somewhat similar to the facts in *Labry*, wherein the trial court likewise adopted the proposed legal grounds for the grant of summary judgment prepared by counsel for one party. On appeal, counsel for the other party argued that the trial court abrogated its duty pursuant to Rule 56.04 and argued that the order should, therefore, be vacated. The Court in *Labry* concluded, however, that the trial court did not commit reversible error when it adopted the proposed order prepared by counsel. In *Labry*, the trial court orally ruled that the personal guaranties at issue in the case were unambiguous and awarded summary judgment for the full amount of the guaranties to the plaintiff bank. The trial court, however, did not expressly rule on the defendant's good faith defense. The Court of Appeals noted that the trial court directed both parties to prepare proposed orders, which were submitted to the trial court for review. The plaintiff bank's proposed order denied the defendant's good faith argument. Approximately three weeks later, the trial court adopted the order prepared by the plaintiff bank party verbatim. Citing *Airline Construction, Inc. v. Barr*, 807 S.W.2d 247 (Tenn. Ct. App. 1990), in which this Court held that the trial court did not err in requesting the parties to submit proposed findings to the court and eventually adopting verbatim the order that "best represent[ed] the opinion of the [c]ourt," the *Labry* court concluded that the trial court did not err in adopting the plaintiff bank's proposed findings because the order was consistent with the trial court's oral ruling. By expressly awarding judgment to the plaintiff bank, the defendants' good faith defense was implicitly denied. Therefore, while cautioning that "this practice is not favored," the Court nonetheless concluded that it could not "agree that this procedure constitutes reversible error."

The circumstances in this case, however, are quite different from the facts in *Labry*. First, the trial court in this case directed only the party that had been successful in each motion for summary judgment to prepare an order on that claim. In contrast, in *Labry* and in *Barr*, the trial court was faced with two competing proposed orders and simply chose to adopt that order that "best represent[ed] the opinion of the [c]ourt." In addition, the trial court in *Labry* orally provided the rationale for its ruling on the central issue of the case: the interpretation of the personal guaranties at issue. In this case, the trial court's oral statements

provide absolutely no basis for the trial court's ruling. Indeed, after the trial court began to direct the parties regarding an appeal of its ruling, counsel for the Appellant, at the September 6, 2011 hearing, questioned the court as to whether the trial court "had already ruled?" The trial court replied that it was ruling "now" and proceeded to rule in favor of Lakeside on all pending issues. However, the trial court, as detailed above, provided absolutely no reasoning or basis for its decision.

From our review of the record, we conclude that the trial court's action in allowing Lakeside to establish the legal grounds for granting the summary judgment motions at issue was an impermissible abrogation of its duty pursuant to Rule 56.04. First, we note that the trial court required, rather than requested, that counsel for Lakeside prepare the orders on the grant of summary judgment; this was in direct violation of the rule expressed in *Roberts*. *See Roberts*, 611 S.W.2d at 53 (holding that "it is improper for the trial court to require counsel to prepare findings"). In this case, the trial court directed Lakeside to prepare the orders on those issues in which it was successful, specifically directing counsel that the appellate courts would require detailed and specific legal grounds for the trial court's decision. Unlike other cases in which party-prepared orders have been upheld, the trial court did not invite both parties to prepare proposed orders on the motions at issue. *See Madden Phillips*, 315 S.W.3d at 811 (noting that the trial court requested that each party submit proposed orders); *Airline Construction, Inc. v. Barr*, 807 S.W.2d 247, 253 (Tenn. Ct. App.1990) (noting that the trial court invited both parties to submit proposed orders); *see also Roberts*, 611 S.W.2d at 53 (noting that the one party volunteered to prepare the proposed order). In contrast, the trial court in this case required that counsel for Lakeside not only prepare the order, but also "establish the rationale" for the trial court's decision. However, Rule 56.04 expressly states that "the trial court," rather than the parties, "shall state the legal grounds" for granting summary judgment. The term "shall" in a statute or rule connotes that the action is mandatory. *Gabel v. Lerma*, 812 S.W.2d 580, 582 (Tenn. Ct. App. 1990). By requiring counsel for Lakeside to establish the rationale for the decision, the trial court abrogated its duty pursuant to Rule 56.04.

In addition, the trial court declined to provide any reasoning whatsoever for its decision to grant summary judgment in favor of Lakeside on the vicarious liability, false imprisonment, and causation issues. Although we note that, throughout both hearings at issue in this case, the trial court engaged in colloquy in which it could be inferred that the trial court was more amenable to one or another argument from either of the parties, the trial court nevertheless failed to articulate what arguments it ultimately credited in its final rulings. In contrast, in other cases in which party-prepared orders have been affirmed, the trial court provided some reasoning for its decision and merely requested that one party prepare an order that memorialized that decision. *See Roberts*, 611 S.W.2d at 53 (noting that the trial court sent plaintiff's attorney a letter detailing its findings and requested counsel prepare an order to that

effect); ***Labry***, 2012 WL 2196174, at \*5 (noting that the trial court gave an oral ruling as to the central issue in the case). In addition, in other cases, unlike in this case, the trial court adopted only portions of proposed orders after modifying the orders to conform to the trial court's own conclusions regarding the issues. *See **In re B.R.M.*** No. M2008-00854-COA-R3-JV, 2009 WL 2263087 (Tenn. Ct. App. July 28, 2009) (adopting the proposed order only after modifying certain findings); ***Davidson v. Davidson Corp.***, No. 01-A-01-9301-CH00017, 1993 WL 295024 (Tenn. Ct. App. Aug. 4, 1993) (adopting the majority of the proposed order). In this case, however, the trial court provided no reasoning for its decision and thus there is nothing in the record to show the trial court's conclusions regarding these issues.

After Appellant objected that the orders submitted by Lakeside failed to conform to the trial court's oral ruling, the trial court even admitted that it failed to state its legal grounds for its decisions. At the hearing on the orders regarding false imprisonment and vicarious liability, the trial court admitted that it "didn't state the foundation for my ruling." At the hearing on the order granting summary judgment based on a lack of causation, the trial court noted that "[The parties] gave a great deal of information, which I may not have repeated . . . every piece of information that you gave us upon which we reflected when we made the decision." Respectfully, the trial court failed to recite even a single piece of information that was considered in its decision to grant summary judgment on that issue. This practice is in clear violation of the letter and the spirit of Rule 56.04. As previously discussed, Rule 56.04 requires that the trial court not only enter an order containing the reasoning for the decision, but also that it "shall state the legal grounds upon which the court denies or grants the motion." Tenn. R. Civ. P. 56.04. Rule 56.04's requirement that the trial court state the legal grounds for its decision is "specific and without exception." ***Eluhu***, 2009 WL 3460370, at \*21. In short, the mandates contained in Rule 56.04 are not suggestions; they are mandatory requirements for the trial court to follow, in the absence of which this Court cannot make a meaningful appellate review. The treatise, <u>Tennessee Civil Procedure</u>, describes the requirement that the court set forth its reasoning as "enabl[ing] appellate courts to better review whether the trial court granting summary judgment has in fact weighed the evidence and improperly granted the motion." Banks & Entman, Tennessee Civil Procedure § 9-4(b) (2d ed. 2004). This duty is particularly important when the trial court grants a motion for summary judgment. *See* Fed. R. Civ. P. 56 advisory committee note (2010); *see also **Jones v. Professional Motorcycle Escort Service***, L.L.C., 193 S.W.3d 564, 570 (Tenn. 2006) (citing ***Harris v. Chern***, 33 S.W.3d 741, 745 n. 2 (Tenn. 2000) (noting that federal law on a rule similar to a Tennessee rule is persuasive authority). In a recent case in which this Court vacated the grant of summary judgment on the basis of a failure to comply with Rule 56.04, we noted that, without the trial court's basis for granting the motion, "[a]t best we would be speculating as to the reasoning behind the trial court's decision and the facts it considered." ***Winn***, 2010 WL 2265451, at \*6. In this case, we likewise conclude, that, due to the lack of

guidance offered by the trial court in fashioning the orders in this case, counsel for Lakeside was "speculating as to the reasoning behind the trial court's decision." Without any guidance from the trial court, Lakeside was left with no choice but to fashion its own legal grounds for the ruling. However, "[a] trial court's findings and conclusions must be its own." ***Ingram v. Beazer Homes Corp.***, No. M2001-01641-COA-R3-CV, 2003 WL 1487251 (Tenn. Ct. App. March 25, 2003). Indeed, at the hearing on the issue of causation, the trial court directed counsel to prepare the order accompanied by the rationale prior to even ruling on the motion. Only after counsel for the Appellant asked whether the trial court was ruling in favor of Lakeside did the trial court reply, "Yes." Accordingly, a single affirmative response provides the entire basis for the grant of summary judgment on all of Appellant's remaining claims, including claims for medical malpractice, ordinary negligence, negligence per se, negligent infliction of emotional distress, outrageous conduct, and violations of EMTALA.

Appeals from grants of summary judgment motions are common. Summary judgment provides an expeditious and inexpensive means to conclude litigation that is not deemed trial-worthy. ***Evco Corp. v. Ross***, 528 S.W.2d 20, 24–25 (Tenn. 1975). However, because Tennessee law favors "merits-based determinations over efficiency," *see* ***Shipley v. Williams***, 350 S.W.3d 527, 535 n.4 (Tenn. 2011) (quoting Judy M. Cornett, *Trick or Treat? Summary Judgment in Tennessee After Hannan v. Alltel Publishing Co.*, 77 Tenn. L.Rev. 305, 337 (2010)), our law provides that summary judgment should only be granted in limited circumstances. *See generally* ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8–9 (Tenn. 2008). In order to ensure that the circumstances presented by each case meet the high standard required to grant summary judgment, Rule 56.04 requires trial courts to state their legal reasons for granting such motions. *See* ***Skaan v. Federal Exp. Corp.***, No. W2011-01807-COA-R3CV, 2012 WL 6212891, *5 (Tenn. Ct. App. Dec. 13, 2012) (noting that the ***Hannan*** summary judgment standard is "high indeed"). Unfortunately, it appears that the trial court in this case abrogated its duty to state the grounds for its conclusions in favor of party-prepared orders. While party-prepared orders are sometimes permissible, as discussed above, here the trial court acted in contravention of both the rule expressed in ***Roberts***, and Rule 56.04 by failing to provide any rationale for its ruling and instead ***requiring*** Lakeside to prepare the orders at issue, both through a direct command, and by the trial court's own failure to state the legal grounds for the ruling. This failure gave Lakeside no alternative but to establish its own rationale for the trial court's decision. This Court has previously held that when the trial court fails to comply with Rule 56.04, the proper remedy is to vacate the order and remand for the trial court to provide its legal grounds for granting or denying the motion for summary judgment on the record. ***Winn***, 2010 WL 2265451, at *6. However, this Court has chosen to "soldier on" in some cases in which the trial court's reasoning could be inferred because the case presented only a clear legal issue or when the basis for the trial court's ruling is clearly ascertainable. ***Burse v. Hicks***, No. W2007–02848–COA–R3–CV, 2008 WL 4414718, at *2 (Tenn. Ct. App. Sept. 30, 2008); ***Burgess v. Kone, Inc.***, No. M2007–0259–COA–R3–CV,

2008 WL 2796409, at * (Tenn. Ct. App. July 18, 2008). This case involves complicated legal and factual disputes. In addition, while there is some indication in the record that the trial court agreed with many of the arguments offered by Lakeside, the trial court's reasoning is not clearly discernible; at different times, the trial court appeared to agree and disagree with various arguments offered by both Lakeside and the Appellant. The orders entered in this case, however, credit every argument offered by Lakeside, to the complete exclusion of any of the arguments offered by the Appellant. Thus, we are unable to determine what reasoning the trial court, rather than Lakeside, relied on in granting summary judgment on these issues. *See Ingram*, 2003 WL 1487251 (requiring that a trial court's conclusions be its own). Although a trial court's decision is ultimately based upon facts and arguments presented by counsel, it is not an attorney's duty to make the decision for the trial court, nor to decide the basis for the trial court's ruling. Instead, the decision to grant or deny summary judgment falls strictly and solely within the judge's purview. Because the trial court in this case failed to comply with Rule 56.04 and the issues in this case involve complicated legal and factual disputes, we likewise conclude that the appropriate remedy is to vacate the orders and remand for the entry of orders fully compliant with Rule 56.04. Although we recognize that this decision will further extend litigation that has been pending for over seven years, this Court simply cannot "soldier on" to consider the issues in this case when faced with the trial court's clear abrogation of its duty pursuant to Rule 56.04 on issues as complex and important as those involved in this case.

## IV. Conclusion

Based on the foregoing, we vacate the orders of the trial court granting summary judgment in favor of Lakeside and remand to the trial court for all further proceedings as may be necessary and consistent with this opinion. Costs of this appeal are taxed to Appellee, UHS of Lakeside Inc., for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE